Michael F. Beethe - State Bar No. 020770
**WARNER ANGLE HALLAM**
 **JACKSON & FORMANEK PLC**
2555 East Camelback Rd., Suite 800
Phoenix, Arizona 85016
Telephone: (602) 264-7101
E-mail:   mbeethe@warnerangle.com

Amanda N. Harvey*
aharvey@mullen.law
Kayleigh J. Watson*
kwatson@mullen.law
**MULLEN COUGHLIN LLC**
1452 Hughes Rd Suite 200
Grapevine, TX 76051
Telephone: (267) 930-1697

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Crystal Sutton, Leon Sutton, and Clayton Flores, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>Southwest Stage Funding, LLC d/b/a Cascade Financial Services,<br><br>                              Defendant. | Case No. 2:25-cv-00250-SHD<br><br>**SOUTHWEST STAGE FUNDING, LLC D/B/A CASCADE FINANCIAL SERVICES' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT** |

Southwest Stage Funding, LLC d/b/a Cascade Financial Services, though counsel undersigned, files its Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint [Doc. 23].

**I.    Introduction**

Plaintiffs Crystal Sutton, Leon Sutton, and Clayton Flores (collectively, "Plaintiffs") have not been victims of identity theft. There are no allegations in the Consolidated Class Action Complaint ("Complaint") that cybercriminals used their information to commit fraud or any other type of nefarious scheme. Further, the

Complaint is silent as to whether any Plaintiff suffered any type of actual economic harm stemming from the data security incident suffered by Defendant Southwest Stage Funding, LLC d/b/a Cascade Financial Services ("Cascade" or "Defendant"). Accordingly, Plaintiffs have not suffered any injuries-in-fact and do not have standing to bring this putative class action lawsuit under Article III of the United States Constitution. The Court should dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

Even if Plaintiffs had standing to pursue this lawsuit, they failed to plead sufficient facts to state a claim for any of the causes of action asserted in the Complaint. The Complaint should therefore also be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). If the Court does not dismiss the Complaint, it should strike the immaterial and impertinent allegations concerning identity theft that have nothing to do with the parties or facts of this case pursuant to Rule 12(f).

## II.    Relevant Factual Allegations

Cascade is "a company that provides mortgage loans for manufactured homes." Compl. [Doc. 23] ¶ 1. Plaintiffs all assert they are current or former customers of Cascade. *Id.* at ¶ 19. On July 9, 2024, Cascade discovered suspicious activity related to certain employee email accounts (the "Incident"). *Id.* at ¶ 29. In its notification letters issued to Plaintiffs on or around January 16, 2025, Cascade stated that certain information was potentially impacted and may have included an individual's name, date of birth, social security number, and loan number. *Id.*

Plaintiffs Crystal Sutton ("C. Sutton"), Leon Sutton ("L. Sutton"), and Clayton Flores ("Flores") all assert nearly identical allegations. All Plaintiffs allege they are customers of Cascade and received notice letters on or around January 16, 2025. *Id.* at ¶¶ 135, 139, 148, 152, 161, 165. All three Plaintiffs assert they engaged in mitigation

Warner Angle Hallam Jackson & Formanek PLC

efforts, assert boilerplate allegations of harm, received increased spam calls, texts, and/or emails, experienced fear, anxiety, and stress, and anticipate spending time and money responding to the Incident in the future. *Id.* at ¶¶ 140 – 145; 153 – 158; 166 – 169. C. Sutton and L. Sutton assert they paid to subscribe to a credit monitoring service. *Id.* at ¶¶ 141, 154. Flores alleges he placed a security freeze on his credit through the three main credit reporting agencies. *Id.* at ¶ 167.

Plaintiffs C. Sutton and L. Sutton are residents of North Carolina, while Plaintiff Flores is a California resident. *Id.* at ¶¶ 11 – 13. Plaintiffs seek to represent a putative class of "[a]ll individuals residing in the United States whose PII was accessed by an unauthorized party as a result of the data breach reported by Defendant in February 2025." Plaintiff Flores seeks to also represent a California sub-class of "[a]ll individuals residing in California whose PII was accessed by an unauthorized party as a result of the data breach reported by Defendant in January 2025." *Id.* at ¶ 176.

Plaintiffs fail to allege that they suffered any concrete, cognizable injury which is not abstract or speculative in nature. Nor have Plaintiffs alleged injuries that are fairly traceable to this Incident or alleged any true out-of-pocket monetary losses. Plaintiffs allege the mere possibility of future risk that they "may" incur out-of-pocket losses. Moreover, Plaintiffs make no allegations regarding whether any of their data had been exposed to cybercriminals as part of any prior, unrelated data breaches. Further, although Plaintiffs claim they are at an increased risk of identity theft as a result of the Incident, this alleged increased risk of harm does not constitute an actual concrete harm, is purely speculative, and is not a valid form of damages to support Plaintiffs' causes of action. Specifically, all Plaintiffs' purported mitigation effort subjects their claims to dismissal under Arizona law.

Based on these generic and wholly conclusory allegations, the Complaint asserts causes of action for (1) negligence; (2) breach of implied contract; (3) unjust

enrichment; (4) violations of the California Consumer Protection Act; and (5) declaratory and injunctive relief. *Id.* at ¶¶ 190 – 288. Plaintiffs have not alleged any actual identity theft, unreimbursed financial fraud, or misuse of personal information traceable to the Incident, and their claims should be dismissed with prejudice.

**III.    Argument**

**A.    Plaintiffs' Claims Should Be Dismissed for Lack of Article III Standing**

Plaintiffs failed to sufficiently plead any factual material showing that they suffered concrete injuries-in-fact sufficient to give rise to standing under Article III of the United States Constitution. The Court should therefore dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

**1.    Plaintiffs Bear the Burden of Establishing Standing**

Article III limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2. To have standing under Article III, a plaintiff must show each of the following elements: (1) an injury-in-fact; (2) a traceable causal connection between the injury and the conduct complained of; and (3) that it is likely, as opposed to merely speculative, that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "Standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Id.* at 560.

"[W]hen the district court lacks the statutory or constitutional power to adjudicate" a case, the court is obliged to dismiss the case for lack of subject matter jurisdiction. *Rudolph v. California Two Bunch Return, LLC*, No. CV-16-00886, 2017 WL 7101147 (C.D. Cal. May 19, 2017). "As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *TransUnion,*

Warner Angle Hallam Jackson & Formanek PLC

*LLC v. Ramirez*, 594 U.S. 413, 430 – 431 (2021). A plaintiff must demonstrate standing "with the manner and degree of evidence required at the successive stages of the litigation," including at the pleading stage. *Lujan*, 504 U.S. at 561.

### 2.    Plaintiffs Must Show Injury-In-Fact

To have standing to sue, a plaintiff must have suffered an injury-in-fact that is concrete, particularized, and actual or imminent, not merely conjectural or hypothetical. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 578 U.S. at 330 – 331 (quoting *Lujan*, 504 U.S. at 560 n.1). As for concreteness, "[a] concrete injury must be de facto; that is, it must actually exist." *Id.* (internal citations and quotation marks omitted). In other words, it must be "real, and not abstract." *Id.* (internal citations and quotation marks omitted). Because an injury-in-fact cannot be conjectural or hypothetical, mere "[a]llegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409. "Under Article III, federal courts do not adjudicate hypothetical or abstract disputes." *TransUnion*, 594 U.S. at 423.

### 3.    Plaintiffs Do Not Have Article III Standing to Seek Damages

Plaintiffs failed to carry their burden to establish standing to pursue this case under Article III. According to the allegations in the Complaint, Plaintiffs have not suffered any actual injury, such as identity theft. Because a plaintiff must have already suffered an injury-in-fact in order to have Article III standing in a case for damages, Plaintiffs' claims should be dismissed.

Plaintiffs have not alleged facts showing that they suffered an "actual or imminent" harm fairly traceable to Cascade's conduct as required to establish Article III standing. *Travis v. Assured Imaging, LLC*, No. cv-20-00390, 2021 WL 1862446, *1 – 2 (D. Ariz. May 10, 2021) (quoting *Lujan*, 504 U.S. at 560 – 561).

Warner Angle Hallam Jackson & Formanek PLC

Plaintiffs do not allege that they were a victim of identity theft, unreimbursed financial fraud, or any other concrete harm. Each Plaintiff claims they are at a substantially increased risk of fraud, misuse, and identity theft. Compl. [Doc. 23] ¶¶ 142 – 145, 155 – 158, 168 – 171. A "risk" of identity theft is not identity theft or fraud. Plaintiffs' allegations remain boilerplate, conclusory, and lack the requisite factual support because they failed to show how any of these alleged injuries are non-speculative or fairly traceable to the Incident.

Simply put, Plaintiffs have failed to allege any risk of future harm that can confer standing. In *TransUnion*, the Supreme Court clarified the standard that a plaintiff must meet when seeking to establish standing on the basis of a potential future injury. In assessing whether the risk of future harm can constitute an injury-in-fact under Article III, the Supreme Court distinguished between claims seeking injunctive relief and claims seeking monetary damages, finding that in a suit for damages, the mere risk of future harm, without more, cannot qualify as a concrete harm sufficient to establish standing. *TransUnion*, 594 U.S. at 436. Instead, the Court held that a plaintiff must show that the harm actually materialized. *Id.*

In reaching its conclusion, the Supreme Court likened the statutory violation underlying the *TransUnion* plaintiffs' claimed injuries to the common law tort of defamation and explained that "there is 'no historical or common-law analog where the mere existence of inaccurate information, absent dissemination, amounts to concrete injury.'" *Id.* at 434 (quoting *Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*, 879 F.3d 339, 344 (D.C. Cir. 2018)). In rejecting the argument that risk of future disclosure of a credit report could serve as a concrete harm constituting an injury-in-fact satisfying Article III, the Supreme Court agreed with the argument *TransUnion* advanced:

> [I]f an individual is exposed to a risk of future harm, time will eventually reveal whether the risk materializes in the form of actual harm. If the risk of future harm materializes and the individual suffers a concrete harm, then the harm itself, and not the pre-existing risk, will constitute a basis for the person's injury and for damages. If the risk of future harm does *not* materialize, then the individual cannot establish a concrete harm sufficient for standing[.]

*TransUnion*, 594 U.S. at 436 (emphasis in original). Similarly, in this case, Plaintiffs alleged that their information may have been accessible without authorization during the Incident, but no allegations of concrete injury exist until it can be proven that information was actually misused in some way.

Courts in Arizona have already issued rulings in cases much like this and dismissed plaintiffs' allegations in data privacy class actions for failure to plead any cognizable injuries under Article III. In *Travis v. Assured Imaging, LLC*, the court evaluated the named plaintiffs' boilerplate allegations of harm, including the risk of future harm, out of pocket losses, spam, emotional distress, and anxiety. *Travis*, 2021 WL 1862446, *1 – 2. The court held that plaintiffs' claimed injuries from mitigation costs, time and money spent on credit monitoring, diminished value of personal information, and emotional distress and anxiety were insufficient to satisfy the injury-in-fact requirement for Article III standing. *Id.* at *7 – 10. The court further emphasized that "time passing without harm actually occurring further undermines the claim that the threat of harm is immediate, impending, or otherwise substantial." *Id.* at *10. Here, nearly a year has passed since the Incident.

In *Dearing*, the court reasoned that plaintiff failed to show an injury was "certainly impending" or that a "substantial risk that harm will occur" because a phisher may have seen emails in an employee's account during a data security incident. *Dearing v. Magellan Health, Inc.*, No. cv-20-00747, 2020 WL 7041059, *3 (D. Ariz.

Warner Angle Hallam Jackson & Formanek PLC

Sept. 3, 2020). Similarly, Cascade's notification letters *did not* state Plaintiffs' information was deliberately targeted. Compl. [Doc. 23] ¶ 29.

In *Quinalty*, the District of Arizona held that while the two named plaintiffs plead sufficient injury for Article III standing on behalf of themselves, the class's claims were dismissed because "[e]xposure to the breach alone is not a sufficiently concrete injury to establish standing." *Quinalty v. FocusIT LLC*, No. CV-23-00207-PHX-JJT, 2024 WL 342454, *3 (D. Ariz. Jan. 30, 2024). The court explained the class "only suffered harm because their data was subject to the breach." *Id.* The court emphasized that plaintiffs did not allege the class suffered actual identity theft, emotional distress, or incurred out-of-pocket expenses, holding that there were insufficient facts to establish standing for the class. *Id.*

Here, the named Plaintiffs have not even pled sufficient cognizable injuries to satisfy the requirements under Article III for themselves, let alone the purported nationwide class and California sub-class. Unlike one named plaintiff in *Quinalty*, that plead an already materialized financial harm, none of the three named Plaintiffs here have asserted any cognizable injuries. *Id.* at *1.

As one decision noted, "[g]iven the holding in *TransUnion*, it is far from clear that any case finding a concrete injury based merely on an abstract risk of future identity theft following a data breach is still good law, at least with respect to a claim for damages." *Legg v. Leaders Life Ins. Co.*, 574 F.Supp.3d 985, 993 (W.D. Okla. 2021). Indeed, in data privacy class actions since *TransUnion*, courts have found plaintiffs lack Article III standing where their purported injuries-in-fact consist of the risk of future identity theft. *See id.* (dismissing case where "Plaintiff only pleads facts showing that there is a non-imminent risk of possible future injury following the data breach, [which] is not sufficient to confer standing"); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. 19-2904, 2021 WL 5937742, at

*10 (D.N.J. Dec. 16, 2021) (dismissing claims brought by plaintiffs alleging risk of future identity theft who "fail to account for . . . the Supreme Court's recent admonition that an unmaterialized risk of future of harm cannot confer standing in a claim for damages").

This Court should follow the *Travis* and *Dearing* opinions and dismiss Plaintiffs' claims because they do not have cognizable injuries to establish Article III standing to seek monetary damages.

### 4.    Mitigation Efforts Do Not Establish An Injury-In-Fact Under Article III

Attempting to allege some type of redressable injury, Plaintiffs also claim they were forced to spend time and unspecified sums of money on mitigation efforts related to the risk of identity theft. Plaintiffs C. Sutton and L. Sutton allege to have enrolled in a credit monitoring service, while Plaintiff Flores claims he placed a security freeze on his credit. Compl. [Doc. 23] ¶¶ 141, 155, 167. But if the risk of future identity theft itself cannot establish standing, Plaintiffs cannot manufacture standing by incurring self-imposed costs. Although Plaintiffs generally allege that they have suffered and will continue to suffer monetary loss, loss of time and productivity from mitigation efforts, and economic harm, they have not included any specific factual allegations regarding how they incurred monetary losses or how they "lost time" through these purported mitigation efforts. *Id.* ¶¶ 140 – 142, 153 – 155, 166 – 168. Their claims remain impermissibly generic and devoid of any specific allegations which is fatal to their claims under Arizona law.

In *Griffey I*, the court determined that plaintiffs' alleged mitigation efforts, continued risk to their information, and risk of future harm are not cognizable injuries. *Griffey v. Magellan Health Inc.*, ("*Griffey I*"), 562 F.Supp.3d 34, 46 (D. Ariz. 2021). Likewise, in *Durgan*, the court held that plaintiffs failed to allege a cognizable risk of

Warner Angle Hallam Jackson & Formanek PLC

imminent harm, their mitigation expenses were speculative, and that diminished value of personal information and lost benefit of the bargain are not cognizable injuries. *Durgan v. U-Haul Int'l, Inc.*, No. CV-22-01565-PHX-MTL, 2023 WL 7114622, *2 – 4 (D. Ariz. Oct. 27, 2023).

Even if they had included such allegations, a plaintiff cannot "manufacture standing" simply by "incur[ing] certain costs as a reasonable reaction to a risk of harm." *Clapper*, 568 U.S. at 416. Here, where the harm of identity theft failed to materialize in nearly one year since the Incident, Plaintiffs cannot use mitigation efforts to create Article III standing where it does not already exist. "Thus, while it may have been reasonable to take some steps to mitigate the risks associated with the data breach, those actions cannot create a concrete injury" sufficient to confer standing to seek damages. *Legg*, 574 F.Supp.3d at 994. Here, where the harm of identity theft failed to materialize, Plaintiffs cannot use mitigation efforts to create Article III standing where it does not already exist.

### 5.    Plaintiffs Cannot Show Standing Through Alleged Diminution in Value of Personal Information

Plaintiffs also argue they suffered injuries in the form of "lost value or diminished value of PII." Compl. [Doc. 23] ¶¶ 9, 142, 155, 168. Plaintiffs have not—and cannot—offer any factual support for this argument. *Griffey I* determined that plaintiffs' boilerplate claims of future injury, including diminished value of information, were not cognizable injuries. The court reasoned plaintiff "must establish both the existence of a market for [their] personal information and an impairment of [their] ability to participate in that market." The *Durgan* court followed *Griffey I*, agreeing that plaintiffs' diminished value of information claim was not a cognizable injury. *Durgan*, 2023 WL 7114622, *3. In *Johnson*, the court agreed with both *Griffey I* and *Durgan*, rejecting plaintiffs' claim based on a blog post that there is "black market"

Warner Angle Hallam Jackson & Formanek PLC

value to personal information. The court concluded that these complaints do not establish the information actually lost value and were too speculative. *Johnson v. Yuma Regional Medical Center*, 2024 WL 4803881, *3 (D. Ariz. Nov. 15, 2024).

The decisions that have accepted diminution in value of personal information to establish standing "involved circumstances where the defendants collected information that was itself monetized and used for commercial purposes." *In re Am. Med. Collection Agency*, 2021 WL 5937742, at *10. "The [Complaint] here contains no similar allegation. Absent such circumstances, there is no loss of value in the information sufficient to state a concrete injury." *Id.*; *see also Green v. eBay, Inc.*, No. 14-1688, 2015 WL 2066531, n.59 (E.D. La. May 4, 2015) ("Plaintiff has failed to allege facts indicating how the value of his personal information has decreased as a result of the Data Breach"); *In re Samsung Data Security Breach Litig.*, No. 1:23-md-03055, 2025 WL 271059, *7 – 8 (D. N.J. Jan. 3, 2025) (rejecting the plaintiffs' standing based on their "speculative allegation of future potential misuse [that] requires a 'highly attenuated chain of possibilities' which 'requires guesswork'").

Here, Plaintiffs offered no factual support for the conclusory argument that their information lost value. Plaintiffs do not explain exactly how the value of their information has been damaged, the amount of the purported decrease, or how that would directly impact them – i.e., that they would somehow have monetized their own information in a way that they now cannot do to the same extent. Accordingly, they cannot rely on this theory to establish standing.

### 6.    Plaintiffs Cannot Show Standing Through Spam Communications

All three named Plaintiffs allege that they experienced an increase in spam emails, text messages, and phone calls as a result of the Incident. Compl. [Doc. 23] ¶¶ 143, 156, 169.

Numerous courts have determined that increased spam messages are insufficient to constitute an injury-in-fact for Article III standing in data breach cases, including the District of Arizona. In *Johnson*, the court evaluated plaintiffs' injury allegations stemming from the receipt of spam emails, messages, and calls, and the assertion that they purchased credit monitoring products as part of their mitigation efforts. *Johnson*, 2024 WL 4803881 at *6. The court determined that "[t]here is no connection between credit monitoring services and how those services avert spam or phishing or what those expenditures entailed. The threat averted is that of fraud and identify theft, not the 'annoyance' experienced in receiving spam." *Id.*

Numerous courts across the country have reached the same conclusion as the *Johnson* court. *See also*, *In re Samsung*, 2025 WL 271059, *8 – 9 (collecting data privacy cases where allegations of increased phishing and spam are insufficient to establish injury-in-fact); *In re Illuminate Educ. Data Sec. Incident Litig.*, No. 22-1164, 2023 WL 3158954, at *3 (C.D. Cal. Apr. 19, 2023) (determining plaintiff's "receipt of spam, absent any other injury, is insufficient to establish an injury for the purposes of standing"); *In re ESO Solutions, Inc. Breach Litigation*, No. 1:23-cv-1557-RP, 2024 WL 4456703, *5 (W.D. Tex. July 30, 2024) ("[a]bsent more factual allegations, this increase in spam cannot be attributed to [the defendant's] data breach"); *Pulliam v. West Technology Group, LLC*, 8:23-cv-159, 2024 WL 356777, at *10 (D. Neb. Jan. 19, 2024) (analyzing plaintiffs' allegations of harm in a data breach and determining that an increase in spam messages is not a cognizable harm for Article III standing); *McCombs v. Delta Grp. Electronics, Inc.*, 676 F. Supp. 3d 1064, 1074 (D. N.M. 2023) (rejecting plaintiff's argument that increased spam communications after defendant's data breach were a concrete harm because plaintiff had not plausibly asserted a nexus between the incident and the spam communications); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1051 (N.D. Cal. 2022) (reasoning that plaintiffs' receipt of spam emails,

Warner Angle Hallam Jackson & Formanek PLC

without more, does not constitute an injury-in-fact for Article III standing purposes); *Blood v. Labette County Medical Center*, 5:22-cv-04036, 2022 WL 11745549, at *6 (D. Kan. Oct. 20, 2022) (finding that spam calls, texts, and emails do not constitute an injury-in-fact for standing); *Legg*, 574 F.Supp.3d at 993 (determining plaintiff's "receipt of phishing emails…does not 'plausibly suggest' that any actual misuse" of her information occurred, concluding plaintiff failed to establish Article III standing); *Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) (data breach plaintiffs "have not established a cognizable injury for purposes of their negligence claim" because "[t]he alleged injuries here stem from the danger of future harm").

Here, Plaintiffs' Complaint offers no basis to reach a different conclusion from the numerous courts cited above. Plaintiffs' claim of increased spam is premised "upon information and belief." Compl. [Doc. 23] ¶¶ 143, 156, 169. Plaintiffs do not offer any further information as to the nature of this supposed increase in spam messages, whether they were receiving such contact before, etc. They also seemingly admit that the information involved in the Incident would not be sufficient to result in an increase in spam, and that information like their phone number or email address could have come from other sources. *Id.* That is, their allegations inherently admit to a lack of traceability to this Incident with respect to the supposed increase in spam. Therefore, Plaintiffs' allegations on this front fall short of establishing their own standing.

## B.    Plaintiffs Failed to State A Claim Upon Which Relief Can be Based

To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2009)). A complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (citing *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Plaintiffs' factual allegations "must establish more than a sheer possibility that a defendant has acted unlawfully." *Perrill v. Equifax Info. Servs., LLC*, 205 F.Supp.3d 869, 872 (W.D. Tex. 2016). Plaintiffs failed to plead sufficient facts to support any of the causes of action set forth in the Complaint.

### 1.    Choice of Law

As an initial matter, the Court must decide which state's law to apply. A federal court sitting in diversity jurisdiction applies the choice of law rules from the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Arizona choice of law, courts follow the Restatement (Second) of Conflicts of Law which sets forth "several relevant factors in determining which law to apply, including: (1) the needs of the interstate systems, (2) the relevant policies of the forum state, (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (4) the protection of justified expectations, (5) the basic policies underlying the particular field of law, (6) certainty, predictability, and uniformity of result, and (7) ease in the determination and application of the law to be applied." *Patton v. Cox*, 276 F.3d 493, 496 (9th Cir. 2002) (citing Restatement (Second) of Conflict of Laws § 145(2) (1971)).

Here, Plaintiffs are residents of North Carolina and California. Compl. [Doc. 23] ¶¶ 11 –13. Defendant's principal place of business is located in Arizona, and "the acts and omissions giving rise to Plaintiffs' claims occurred in and emanated" in Arizona. *Id.* ¶ at 16. "According to the Restatement, the objective is to apply the law of the state that has the 'most significant relationship' with the parties and the dispute."

Warner Angle Hallam Jackson & Formanek PLC

*Patton*, 276 F.3d at 496. As such, for purposes of this Motion, Cascade applies Arizona law.

### 2.    Plaintiffs Failed to State a Claim for Negligence

To bring a negligence claim under Arizona law, a plaintiff must establish (1) a duty requiring defendant to conform to a certain standard of care; (2) breach of that standard; (3) a causal connection between the breach and the resulting injury; and (4) actual damages. *Quiroz v. ALCOA Inc.*, 416 P.3d 824, 827 – 828 (Ariz. 2018). Negligence damages must be actual and appreciable, non-speculative, and more than merely the threat of future harm. *CDT, Inc. v. Addison, Roberts & Ludwig*, 7 P.3d 979, 982 – 83 (Ariz. Ct. App. 2000).

District courts in Arizona have evaluated and dismissed plaintiffs' negligence claims in data privacy class actions. In *Bozek*, the court dismissed plaintiffs' negligence claim because their damages claims for lost time, mitigation efforts, and continued risk of future harm were insufficient and not cognizable under Arizona law. *Bozek v. Arizona Labor Force, Inc.*, No. CV-24-00210-PHX-SMB, 2025 WL 264174, *5 – 6 (D. Ariz. Jan. 22, 2025). The court reasoned that plaintiffs had not alleged to have suffered from fraud of identity theft and emphasized that "Arizona law…requires negligence damages to be more than merely the threat of future harm." *Id.* at *5 (citing to *Griffey I*, 562 F.Supp.3d at 46).

In *Quinalty*, the court dismissed one named plaintiff's negligence claim for failure to establish duty and breach, and dismissed the second named plaintiff's negligence claim for failure to establish duty, breach, and damages. *Quinalty*, 2024 WL 342454, *3. The court determined that neither plaintiff plead sufficient facts to establish duty and breach, reasoning that (1) a duty does not arise solely from defendant obtaining plaintiffs' information from financial institutions; and (2) plaintiffs' broad and conclusory characterization of defendant's security posture failed to establish

unfair or deceptive conduct, or a violation of industry standards. *Id.* at *4. The court further held that the second named plaintiff, Motta, did not plead any tangible harm for her lost time, diminution in value, risk of future harm, and emotional distress allegations. *Id.* at *4.

In *Durgan*, the court dismissed plaintiffs' negligence claim for failure to adequately plead damages because plaintiffs failed to allege a cognizable risk of imminent harm, their mitigation expenses were speculative, and diminished value of personal information and lost benefit of the bargain are not cognizable injuries. *Durgan*, 2023 WL 7114622, *2 – 4.

### 3.    Plaintiffs Failed to State a Claim for Breach of Implied Contract

The elements for a breach of contract and breach of implied contract are the same under Arizona law. The plaintiff must establish (i) the existence of an agreement or a promise, (ii) breach of that promise, and (iii) damages resulting from that breach. *Thomas v. Montelucia Villas, LLC*, 302 P.3d 617, 621 (Ariz. 2013). "The distinction between an express contract and one implied in fact is that in the former the undertaking is made by words written or spoken, while in the latter conduct rather than words conveys the necessary assent and undertakings." *Barmet v. John & Jane Doe Partners A-D*, 747 P.2d 1218, 1220 (Ariz. 1987).

Here, Plaintiffs have not sufficiently plead any element of their breach of implied contract claim, including the purported terms of an agreement. Instead, Plaintiffs merely allege that when they provided their information to Cascade and "entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information…" Compl. [Doc. 23] ¶ 236. Plaintiffs contend that Defendant asserted it would utilize security measures that complied with federal law – which Cascade did. *Id.* at ¶ 234. The mere assertion that Cascade was the victim

Warner Angle Hallam Jackson & Formanek PLC

of a cyber incident is not enough to support a breach of an implied contract claim, or the conclusory assertion that Cascade did not utilize reasonable safeguards. *Id.* at ¶ 242 – 243.

District courts in Arizona have addressed breach of implied contract claims in data privacy cases and consistently held that plaintiffs fail to sufficiently allege the terms of implied contracts. *See Griffey I*, 562 F.Supp.3d at 51 – 52; *Durgan*, 2023 WL 7114622, at *4 (dismissing breach of implied contract claim for failure to allege consideration or damages); *Johnson*, 2024 WL 4803881, at *10 (dismissing the plaintiffs' breach of implied contract claim as conclusory and failing to allege consideration). The *Griffey I* court dismissed plaintiffs' breach of implied contract claim, reasoning that plaintiffs "allege no specific reasons explaining why [defendant's] data security was inadequate" or how defendant's data security practices fell below industry standards. *Griffey I*, 562 F.Supp.3d at 50 – 51. The court noted that plaintiffs did not allege specific terms of the implied contract with defendant, such as "when and to what extent did the contract apply," and that these vague allegations were not sufficient to establish a breach of implied contract claim. *Id.*

Here, Plaintiffs have not identified any facts or circumstances that indicate how Cascade allegedly manifested an intent to provide data security as part of the parties' relationship. Instead, Plaintiffs repeatedly reference their Consolidated Complaint's conclusory allegations that Cascade must have had insufficient data security protocols because it suffered a data breach. Plaintiffs have not plead any facts that show intent or agreement by Cascade to provide specific data security services. Cascade did not affirmatively or impliedly offer data privacy services when it accepted Plaintiffs' information; rather, Cascade provided mortgage loan services to Plaintiffs. Finally, Plaintiffs' Complaint has not identified any specific damages or injuries for any of the named plaintiffs. As such, this claim should be dismissed with prejudice.

### 4.    Plaintiffs Failed to State a Claim for Unjust Enrichment

Under Arizona law, "unjust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another." *Trustmark Ins. Co. v. Bank One, Arizona, NA*, 48 P.3d 485, 491 (Ct. App. 2002) (internal citations omitted). Arizona courts require a plaintiff to show five elements: "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy." *Id.*

Plaintiffs assert they provided their information to Cascade and assert that it is a "monetary benefit." Compl. [Doc. 23] ¶ 256. Plaintiffs further allege Cascade was unjustly enriched because it "enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' Personal Information." *Id.* at ¶ 260. Nowhere do Plaintiffs allege they were denied or deprived of services in any way and cannot show Cascade received an enrichment.

Moreover, Plaintiffs' allegations are mirror images of the arguments the *Griffey I* court explicitly rejected. *See Griffey I*, 562 F.Supp.3d at 50 (rejecting plaintiffs' unjust enrichment claim because there was no way plaintiffs could establish defendant was enriched, that plaintiffs were impoverished, or that there was a connection between the enrichment and impoverishment). Arizona courts continue to follow the holding set out in *Griffey I* and deny unjust enrichment claims in data privacy cases. *See Quinalty*, 2024 WL 342454 at *5 – 6 (dismissing unjust enrichment claim because plaintiffs' conclusory statements that they received unreasonable data security are insufficient to establish impoverishment); *Johnson*, 2024 WL 4803881, at *11 (rejecting plaintiffs' unjust enrichment claim as "asserting vague, speculative, and conclusory allegations uttered as fact to show their predetermined conclusion is exactly

Warner Angle Hallam Jackson & Formanek PLC

1  that – a mere conclusion lacking sufficient facts"). Accordingly, this claim should be

2  dismissed with prejudice.

3       **5.      Plaintiff Flores Failed to State a Claim for Violations of the**

4              **California Consumer Privacy Act ("CCPA")**

5       Plaintiff Flores has not plausibly alleged a violation of the CCPA. To state a

6  claim under the CCPA, a "consumer" must plausibly allege that their personal

7  information was "[1] subject to an unauthorized access and exfiltration, theft, or

8  disclosure as a result of [2] the business's violation of the duty to implement and

9  maintain reasonable security procedures and practices appropriate to the nature of the

10 information." Cal. Civ. Code § 1798.150(a)(1). A consumer must provide a business

11 30 days' written notice identifying the specific provisions the consumer alleges to have

12 been violated to bring a CCPA violation. Cal. Civ. Code § 1798.150(b).

13      First, Flores failed to provide the statutorily required 30 days' notice to Cascade

14 before filing his Complaint. Flores only issued his purported CCPA notice seeking

15 both pecuniary and statutory damages on the same day the Complaint was filed –

16 May 5, 2025.[1] In *Griffey II*, the court dismissed plaintiffs' CCPA claim with prejudice

17 after failing to satisfy the 30-day notice requirement. *Griffey v. Magellan Health Inc.*,

18 2022 WL 1811165, *6 (D. Ariz. June 2, 2022) [hereinafter *Griffey II*]. The Court

19 should similarly dismiss the claim here.

20      Second, Flores wholly fails to meet the statutorily required element of "actual

21 pecuniary damages." Flores alleges general mitigation efforts, placing a credit freeze

22 through the three credit reporting agencies, and increased "spam calls, texts, and/or

23 emails." Compl. [Doc. 23] ¶¶ 166 – 167, 169. Flores also asserts a laundry list of

24

25

26

27

---

28 [1] Cascade timely responded to Plaintiff Clayton Flores' purported CCPA demand letter on May 21, 2025.

generic potential risks of future harm. *Id*. at ¶ 168. None of these allegations constitute "actual pecuniary damages" as required under the CCPA.

Third, Cal. Civil Code 1798.150 specifies that a violation only occurs when an individual's personally identifiable information (PII) is subject to "unauthorized access and exfiltration, theft, or disclosure . . . [.]" The notice letter Flores received on or around January 16, 2025, advised that Cascade "became aware of suspicious activity related to certain employee email accounts" and "confirmed that certain information related to you was contained within the affected email accounts." Compl. [Doc. 23], *Ex. A, Flores Notice of Data Breach Letter*. The notice letter also stated that Defendant is "unaware of any actual or attempted misuse of your information as a result of this event…" *Id*. Flores' notice letter does not support the baseless allegation that Flores' or other similarly situated individuals' information was actually accessed and exfiltrated, stolen or disclosed, or that Flores suffered any damages as a result.

Flores has not asserted any out-of-pocket damages, failed to comply with the CCPA's 30-day notice requirement, and failed to establish why or how Cascade's data security was inadequate. As such, his CCPA claim should be dismissed with prejudice.

### 6. Plaintiffs Failed to State a Claim for Declaratory and Injunctive Relief

Plaintiffs' fifth cause of action seeks declaratory and injunctive relief, which they are not entitled to. Compl. [Doc. 23] ¶¶ 279 – 288. The Declaratory Judgment Act allows a court, in the case of an actual controversy, to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. To state a claim for relief under the Declaratory

Warner Angle Hallam Jackson & Formanek PLC

Judgment Act, a plaintiff must adequately allege a dispute that is: (1) "definite and concrete, touching the legal relations of parties having adverse legal interests"; (2) "real and substantial"; and (3) "admit[ting] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

When seeking declaratory relief, "the plaintiff must show a real and immediate threat of future or continuing injury apart from any past injury." *Aransas Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014) (internal citation omitted). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Id.* (internal citation omitted). By focusing on past actions, Plaintiffs failed to meet their burden. *See, e.g.*, *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 718 (8th Cir. 2017) (dismissing declaratory judgment claim focused on a past data breach and not ongoing conduct). The Supreme Court has held that a plaintiff may rely on a potential future injury to establish standing to seek "forward-looking" injunctive relief, "at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion*, 594 U.S. at 415 (internal citations omitted); *see also Dugas v. Starwood Hotels and Resorts Worldwide, Inc.*, No. 16-0014, 2016 WL 6523428, at *8 (S.D. Cal. Nov. 3, 2016) ("[A]n order requiring Defendants to enhance their cybersecurity in the future . . . will not provide any relief for past injuries or injuries incurred in the future because of a data breach that has already occurred").

The allegations in the Complaint focus on an Incident that occurred nearly one year ago and Plaintiffs' requested relief centers on improvements to Cascade's current data security, which would have no impact on an event that already occurred. Plaintiffs have not pleaded any facts that show any ongoing or continuing injury and are not

entitled to declaratory relief. Consequently, this claim should be dismissed with prejudice.

### C.    Alternatively, Immaterial and Impertinent Allegations Should be Stricken

If the Court does not dismiss the Complaint, it should strike the immaterial and impertinent allegations concerning identity theft that have nothing to do with the parties or facts of this case. Federal Rule of Civil Procedure 12(f) permits a court to strike immaterial and impertinent allegations from a pleading on its own or upon motion by a party. *See* Fed. R. Civ. P. 12(f).

Instead of focusing solely on the relevant data security incident and Plaintiffs' individual experiences, Plaintiffs added extraneous material concerning the actions of identity thieves and statistics about cybercrime. *See* Compl. [Doc. 23] ¶¶ 37 – 134. Plaintiffs pled no actual facts regarding the motivations of the cybercriminals who executed the attack on Cascade. To make up for that missing information, Plaintiffs include immaterial and generalized allegations that are designed to improperly inflame the issues and lend weight to the alleged risk of future identity theft. Plaintiffs should limit the Complaint to the Cascade data incident and their own individual experiences, and the Court should strike paragraphs 37 – 134 pursuant to Rule 12(f).

## IV.    Conclusion

For all the foregoing reasons, Defendant Cascade respectfully requests that Plaintiffs' Complaint [Doc. 23] be dismissed in its entirety with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In the event the Court does not dismiss the Complaint, Cascade respectfully requests that it strike paragraphs 37 – 134 from the Complaint pursuant to Federal Rule of Civil Procedure 12(f).

Warner Angle Hallam Jackson & Formanek PLC

DATED this 18th day of June, 2025.

**WARNER ANGLE HALLAM
JACKSON & FORMANEK PLC**

By */s/ Michael Beethe*
    Michael Beethe
    2555 East Camelback Road, Suite 800
    Phoenix, Arizona 85016

    Amanda N. Harvey*
    Kayleigh J. Watson*
    **MULLEN COUGHLIN LLC**
    1452 Hughes Rd Suite 200
    Grapevine, TX 76051

    *Attorneys for Defendant*

    *\*Pro hac vice*

**<u>CERTIFICATE OF CONFERENCE</u>**

I hereby certify that on May 29, 2025, I conferred with counsel for Plaintiffs and they are opposed to the relief sought in the instant Motion.

    */s/ Kayleigh Watson*

Warner Angle Hallam Jackson & Formanek PLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 18th day of June, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF filing system, and that on said date a copy was delivered electronically via the CM/ECF filing system to:

Cristina Perez Hesano
PEREZ LAW GROUP, PLLC
cperez@perezlawgroup.com

Jeff Ostrow
KOPELOWITZ OSTROW P.A.
ostrow@kolawyers.com

Mariya Weekes
MILBERG COLEMAN BRYSON PHILLIPS GROSMAN, PLLC
mweekes@milberg.com

*Attorneys for Plaintiff and the Proposed Class*

*/s/  Lisa Mazza*